UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TATYANA GERASYUTENKO,

                                Plaintiff,

v.

MASON TENDERS' DISTRICT COUNCIL
PENSION FUND, and MASON TENDERS'
DISTRICT COUNCIL TRUST FUNDS,

                                Defendants.

**MEMORANDUM AND ORDER**
19-cv-5473 (LDH)

L**A**SHANN D**E**ARCY HALL, United States District Judge:

    Plaintiff Tatyana Gerasyutenko brings the instant action against Defendants Mason Tenders' District Council Pension Fund and Mason Tenders' District Council Trust Funds for breach of fiduciary duty and unjust enrichment. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

### BACKGROUND[1]

    Plaintiff is the former spouse of Pavel Gerasyutenko whom, through his union job, was a participant in the Mason Tenders' District Pension Fund (the "Plan"). (Compl. ¶ 4, ECF No. 1-1.) Plaintiff and Mr. Gerasyutenko were married on April 28, 1978, and subsequently divorced in a matter commenced in Kings County Supreme Court (the "Divorce Action"). (*Id.* ¶ 3.) On June 7, 2016, the Kings County Supreme Court issued a decision which stated, in relevant part, "Husband has a pension and annuity earned through his union job. The parties stipulated that Wife is entitled to 50% of the marital portion of Husband's Mason Tenders local 79 pension and

---

[1] The following facts are taken from the complaint and are assumed to be true for purposes of deciding the instant motion.

annuity. The[y] further stipulated that Wife's interest in the pension and annuity would be distributed through a Qualified Domestic Relations' Order (QDRO)." (Compl. ¶ 4.)

The QDRO was entered by the court on March 21, 2017, and designates Mr. Gerasyutenko as a Plan Participant, and Plaintiff as an Alternate Payee.[2] (Decl. Anna Gustin, ECF No. 14-2, Ex. 3 at 2, ECF No. 14-5 (the "QDRO").) In relevant part, the QDRO indicates:

> At such time after the Earliest Retirement Age of the Participant, or the Participant actually retires, or the Alternate Payee elects to commence payment of her portion of the Retirement Allowance if the Participant has not yet retired, the Plan is hereby directed to pay the Alternate Payee that portion of the Participant's monthly Retirement Allowance which is equal to FIFTY PERCENT (50%) of the product obtained by multiplying the total amount of the monthly Retirement Allowance due [to] the Participant as defined in the Plan, at the time of the Alternate Payee's benefit commencement, by the *Coverture Fraction*.

(*Id.* 4 (emphasis added).) The QDRO further defines Coverture Fraction as the:

> [P]ortion of the Participant's retirement benefit acquired during the parties' marriage. . . [t]he numerator of said fraction is the total pension credits earned by the Participant, from the Participant's date of initial Plan participation, or the date of the parties' marriage . . . and the denominator of which is the total pension credits earned by the Participant's date of initial participation in the Plan, up to the date of the Participant's retirement, termination or death, or up to the date the Alternate Payee elects to begin collection of benefits if the Participant has not yet retired, terminated employment or died.

(*Id.*) The QDRO does not indicate the amounts to be distributed to the Alternate Payee under the Plan. The QDRO, indicates however that:

> [T]he Plan benefits payable to the Alternate Payee shall be payable in any form in which such benefits may be paid under the Plan to the Participant . . . Said benefits shall be payable to the Alternate Payee for her lifetime and shall be actuarially adjusted as necessary, in accordance with the terms of the Plan, to reflect that the benefit will be paid over her lifetime and not the Participant's lifetime.

---

[2] The QDRO has been incorporated into the complaint by reference. (*See, e.g.*, Compl. ¶¶ 7-9, 15, 24, 27.) "It is well established that '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.'" *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

(*Id.* 5.)

The Defendants are currently distributing to Plaintiff approximately $850 per month in plan benefits. (Compl. ¶ 25.) Although these benefits are intended to be paid until Plaintiff reaches the age of 92, Defendants have not disclosed to Plaintiff the total amount of her entitlement nor provided the option of a lump sum payment in lieu of the monthly payment. (*Id.* ¶ 27.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

### A.   Preemption of State Law Claims

Plaintiff commenced the instant action in the Supreme Court of the State of New York, Kings County alleging claims for unjust enrichment and breach of fiduciary duty. (Removal Not. ¶ 1, ECF No. 1.) Thereafter, Defendants removed the action to this Court asserting original

3

jurisdiction based on federal question jurisdiction. (*Id.* ¶¶ 7-19.) Specifically, Defendants maintained that Plaintiff's causes of action for breach of fiduciary duty and unjust enrichment relate to a benefit plan as defined under the Employee Retirement Income Security Act of 1974 ("ERISA") and are preempted by statute. (*Id.* ¶ 8.) Thus, according to Defendants, Plaintiff's claims must be heard by this Court. (*Id.* ¶ 11.) Plaintiff did not oppose the removal of this action to federal court—effectively conceding to the jurisdiction of this Court.[3] But to remove any doubt, the Court agrees that Plaintiffs' claims for unjust enrichment and breach of fiduciary duty are preempted by federal law.

Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). Of particular relevance here, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). The language of this preemption provision is deliberately broad and represents Congress' intent to "establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987). Accordingly, in assessing whether a claim is preempted, the Supreme Court has instructed courts to interpret the term "related" broadly. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983) ("Congress used the words 'relate to' in § 514(a) in their broad sense."). Of course, ERISA's preemption provision is not without limit. *See Stevenson v. Bank of New York Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (acknowledging the reluctance to find

---

[3] Curiously, although Plaintiff did not oppose removal of this action to federal court based on the grounds that it raises a federal question, as discussed below, Plaintiff nonetheless maintains that her state law claims are not preempted by ERISA. (Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") 18-20, ECF No. 15.)

4

ERISA preemption where "state laws do not affect the relationships among the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries"). Those limitations are simply not implicated here.

In this case, Plaintiff maintains that Defendants breached their fiduciary duty by failing to provide complete information pertaining to her Plan benefits or fully distribute the benefits to her in a lump sum. (Compl. ¶¶ 19-32; Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") 8, ECF No. 15.) Similarly, Plaintiff complains that Defendants have been unjustly enriched by depriving her of the immediate benefit of her Plan assets. (Compl. ¶¶ 33-39; *see also* Pl.'s Opp'n 16-18.) Under both claims, Plaintiff seeks an order directing Defendants to release the full portion of her entitlement under the Plan according to the QDRO, or in the alternative, an order directing the Defendants to increase her monthly Plan payments from $850 a month to $5,000 to cover her monthly expenses. (Compl. at 7-8.) There is simply no way to construe Plaintiff's allegations or the relief she seeks as unrelated to the Plan. *Cf. Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60–61 (2d Cir. 2010) (finding plaintiff's claims were not preempted as they did not "derive[ ] from the particular rights and obligations established by [any] benefit plan[ ] but rather from a separate promise."). As such, Plaintiff's claims are preempted by ERISA. *See, e.g., Arditi v. Lighthouse Int'l*, 676 F.3d 294, 300-301 (2d Cir. 2012), as amended (Mar. 9, 2012) (affirming plaintiff's claims as preempted under ERISA where plaintiff "was in fact a participant in the Plan and his pension rights arose under the Plan").

Plaintiff's protestations to the contrary are unavailing. Indeed, rather than call into question whether preemption applies, Plaintiff's arguments only bolster the Court's conclusion. In particular, Plaintiff argues that "Plaintiff is in no way trying to move beyond the benefits allowed and predicated to her by the pension plan and is not looking for additional benefits

5

except this that she is entitled under the plan." (Pl.'s Opp'n 19.) Plaintiff even goes so far as to refer the Court to § 502 of the ERISA statute which codifies a beneficiary's right to sue for the enforcement of the ERISA law, stating: "This is exactly what the plaintiff is doing in this case." (*Id.*) On this point, the Court agrees. Plaintiff's state claims for unjust enrichment and breach of fiduciary duty are preempted by federal law and are dismissed accordingly. *See, e.g., Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 153-55 (E.D.N.Y. 2014) (dismissing Plaintiff's New York state common law breach of fiduciary duty claim as preempted under ERISA); *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 160 (E.D.N.Y. 2013) (rejecting Plaintiff's motion to amend his complaint to add a breach of fiduciary duty claim, to the extent being brought under state common law, as futile as it would be preempted by ERISA).

### B.    Claims Construed under ERISA

Even had Plaintiff properly advanced her claims pursuant to ERISA, they are nonetheless ripe for dismissal. The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Here, as Defendants correctly argue, Plaintiff failed to exhaust her administrative remedies prior to the initiation of suit. (Mem. L. Supp. Defs.' Mot. Dismiss ("Defs.'s Mem.") 12-13, ECF No. 14-1.) Plaintiff does not deny this fact but argues that the notification of the denial of Plaintiff's request was somehow deficient, thereby relieving Plaintiff of her obligation to exhaust. (Pl.'s Opp'n 20-22.) Plaintiff cites to no authority, and the Court is aware of none, which recognizes this circumstance as an exception to the exhaustion requirement. Plaintiff's failure to exhaust, on its own, provides a basis to dismiss any ERISA claim. *See Kennedy*, 989 F.2d at 594 ("[E]xhaustion in the context of ERISA requires . . . administrative appeals provided for in the relevant plan or policy.") But there is

6

more.

As noted above, Plaintiff complains that Defendants breached their fiduciary duty by failing to provide complete information pertaining to the benefits or fully distributing them to her in a lump sum. (Pl.'s Opp'n 8.) Referring the Court to *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001), Plaintiff presses that breach of fiduciary duty and unjust enrichment claims are cognizable, under ERISA, as related to the administration of a plan. (Pl.'s Opp'n 19-20.) On this point, Plaintiff is correct.[4] Under Section 502(a)(3) of ERISA, an action may be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Courts have construed this section as allowing claims for both breach of fiduciary duty and unjust enrichment in the ERISA context. *See, e.g*, *Devlin*, 274 F.3d at 89 ("Plaintiffs' cause of action for their breach of fiduciary duty claims arises from ERISA § 502(a)(3)."); *Neidich v. Estate of Neidich*, 222 F.Supp.2d 357, 374-75 (S.D.N.Y. 2002) (considering plaintiff's unjust enrichment claim under ERISA § 502(a)(3)).

That said, Plaintiff misapprehends the operation of Section 502(a)(3). Notably, under Section 502(a)(3) any relief must be equitable in nature. Compensatory damages like those sought by Plaintiff are not provided for. *See, e.g., also Ciampa v. Oxford Health Ins., Inc.*, No. 14-CV-2989, 2015 WL 2337385, at *4 (E.D.N.Y. May 13, 2015) ("Compensatory damages, even if they resulted from a breach of fiduciary duty, are not recoverable as equitable relief under [this section]."). That Plaintiff has cast the relief sought in her complaint as seeking "equitable

---

[4] To be precise, Plaintiff actually relies on *Delvin* to convince the court that state claims for breach of fiduciary duty and unjust enrichment are cognizable. No matter. As discussed above, such claims may be prosecuted under ERISA.

7

relief" is of no moment.  (*See* Compl. ¶ 39.)  At bottom, Plaintiff seeks to recover benefits under the plan.[5]  Such a claim is precluded as a matter of law.  *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *see also Ciampa v. Oxford Health Ins., Inc.*, No. 14-CV-2989, 2015 WL 2337385, at *4 (E.D.N.Y. May 13, 2015) (dismissing plaintiff's breach of fiduciary duty claim under ERISA where plaintiff had not pleaded that she is entitled to any equitable relief, "but solely monetary 'reimbursement' for her medical bills"); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healtmhchoice HMO, Inc.*, No. 13-CV-6551, 2014 WL 4058321, at *5 (S.D.N.Y. Aug. 15, 2014) (rejecting plaintiff's claim for breach of fiduciary duty where "[a]t base, plaintiffs [sought] damages for alleged underpayment or denial of payment."); *Curran v. Aetna Life Ins. Co.*, No. 13-CV-00289, 2013 WL 6049121, at *8 (S.D.N.Y. Nov. 15, 2013) (dismissing plaintiff's brief of fiduciary duty claim where plaintiff alleged defendant "essentially [] erred in its claim determination").[6]

---

[5] Courts within this circuit have recognized that equitable restitution may be an appropriate remedy under ERISA where there has been a showing of unjust enrichment.  *See e.g., Geller v. Cty. Line Auto Sales, Inc*., 86 F.3d 18, 22 (2d Cir. 1996) ("Because the defendants were not unjustly enriched, a restitution award is not available."); *Neidich*, 222 F.Supp.2d. at 374 ("The equitable remedy of restitution is appropriate only where there has been a showing of unjust enrichment." (citing *Brown v. Sandimo Materials*, 250 F. 3d 120, 126 (2d. Cir. 2001)).  Here, however, Plaintiff's request for relief cannot be construed as such, as Plaintiff has not pleaded "that the defendant had wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain."  *Geller*, 86 F.3d at 22 (internal quotations omitted).

[6] Defendants devote much attention to the argument that Plaintiff fails to sufficiently plead an entitlement to additional benefits under ERISA § 502(a)(1)(B).  (Defs.' Mem. 9–12.)  However, Plaintiff does not purport to bring any claim to enlarge her entitlement and no reasonable construction of Plaintiff's causes of action would allow for the conclusion that Plaintiff is seeking to enlarge her entitlement.  To the extent that Plaintiff intended to plead a claim for enlarged benefits, the Court agrees that such a claim is insufficiently pleaded.  That is, as Defendants argue, "Plaintiff does not plead any facts to suggest that the Pension Fund incorrectly calculated her benefit or that she is legally entitled to a lump sum."  (Defs.' Mem. 11.)

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED.

                                              SO ORDERED.

Dated: Brooklyn, New York             /s/ LDH
       March 31, 2021                     LASHANN DEARCY HALL
                                              United States District Judge